UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MADU, EDOZIE & MADU, P.C., and
JOHN EDOZIE,

              Plaintiffs,

 - against -

SOCKETWORKS LIMITED NIGERIA,
ODREK RWABWOGO, ANTHONY
NWACHUKWU, PROSPER ADABLA, and
ALOY CHIFE,

              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/26/10

**OPINION AND ORDER**

07 Civ. 11028  (PKL)

**APPEARANCES**

MARC E. ELLIOT, P.C.
Marc E. Elliott
233 Broadway, 5th Floor
New York, NY 10279

Attorney for the Plaintiffs

STEPTOE & JOHNSON, LLP
John David Lovi
750 Seventh Avenue, Suite 1900
New York, NY 10019

Attorney for the Defendant Anthony Nwachukwu

1

**LEISURE, District Judge:**

This is a diversity action for breach of contract. Plaintiffs, Madu, Edozie & Madu, P.C. (the "Madu Firm") and John Edozie ("Edozie") move, pursuant to Federal Rule of Civil Procedure ("Rule") 4(f)(3), for court-ordered service of process on four defendants—SocketWorks Limited Nigeria ("SLN" or "SocketWorks"), Odrek Rwabwogo ("Rwabwogo"), Prosper Adabla ("Adabla"), and Aloy Chife ("Chife"). Plaintiffs ask the Court for an order permitting substitute service on these four defendants through the law firm, Steptoe & Johnson LLP ("Steptoe & Johnson"), counsel to another defendant in this action, Anthony Nwachukwu ("Nwachukwu"). Additionally, defendant Nwachukwu moves, pursuant to Rule 12(b)(6), to dismiss plaintiffs' complaint for failure to state a claim. For the reasons stated below, plaintiffs' motion for court-ordered service is DENIED and Nwachukwu's motion to dismiss is GRANTED.

**BACKGROUND**

## I. Procedural History

Plaintiffs bring this diversity action against defendants for breach of a Non-Disclosure/Non-Circumvention Agreement (the "Agreement") signed June 29, 2006. The Madu Firm is a law firm incorporated in New York as a professional services corporation with its principal place of business in New York City. (Compl.

¶ 1.) Edozie is a named member of the Madu Firm and an attorney admitted to practice in New York. (Id.) Edozie is a dual citizen of the United Kingdom and Nigeria and a permanent resident alien of the United States who resides in New York. (Oct. 15, 2008 Ltr. to the Court from Marc Elliot & Attached Aff. of John Edozie ¶ 4.) SLN is a foreign corporation located in Nigeria (Compl. ¶ 6) and the remaining defendants reside in various locations: Nwachukwu is a dual citizen of the United States and Nigeria and resides in Connecticut (id. ¶ 2; Nov. 12, 2008 Ltr. to the Court from John Lovi), Rwabwogo resides in Uganda (Compl. ¶ 3), Chife is a permanent resident alien of the United States who resides in Texas (id. ¶ 4), and Adabla resides in Ghana (id. ¶ 5). John Lovi, Esq. of Steptoe & Johnson represents Nwachukwu in this action. Counsel for the remaining defendants have not appeared.

Plaintiffs filed their complaint on December 5, 2007. In the complaint, plaintiffs allege that defendants agreed to issue shares of stock in certain companies and pay finder's fees to plaintiffs for creating SLN subsidiaries in Uganda, Ghana, and Liberia. (Id. ¶ 8.) Plaintiffs also allege that defendants have acknowledged their liability under the Agreement but have refused to issue stock to plaintiffs as promised. (Id. ¶ 11.) Furthermore, plaintiffs claim that defendants transferred significant equity interests in the SLN subsidiaries created in

Uganda, Ghana, and Liberia to third parties in violation of the Agreement. (Id. ¶ 12.) Plaintiffs also claim, against certain defendants, tortious interference with the parties' performance of the Agreement. (Id. Preliminary Statement.) Plaintiffs seek a multitude of relief, including compensatory and punitive damages, attorneys' fees, a judgment declaring plaintiffs the owners of certain stock and imposing a constructive trust to prevent stock transfers, and, for themselves individually and derivatively on behalf of the corporations in which they are deemed to own stock, an accounting of damages suffered. (Id.)

## II.  **Plaintiffs' Motion for Court-Ordered Service**

Plaintiffs seek court-ordered service of the summons and complaint on four of the five defendants in this case. The one properly served defendant in this case, Nwachukwu, was served at his home in Connecticut on February 28, 2008. (Edozie Aff. in Supp. of Court-Ordered Serv. ("Edozie Serv. Aff.") ¶ 15 & Ex. B; Elliott Reply Aff. in Supp. of Court-Ordered Serv. ("Elliott Serv. Aff.") ¶ 4.) Despite using "various methods," plaintiffs have been unable to serve the remaining defendants. (Edozie Serv. Aff. ¶ 18.) While plaintiffs hired a law firm in Lagos, Nigeria to deliver process to SLN and Chife, SLN and Chife do not acknowledge being served. (Id. ¶ 20.) With respect to the remaining defendants, plaintiffs state that they have "been

4

unable to serve Defendant Rwabwogo in Uganda or Defendant A[dab]la in Ghana." (Id. ¶¶ 18, 19.) Because Nigeria, Uganda, and Ghana are not signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 367-69, 658 U.N.T.S. 163, 182-85 (the "Hague Convention"), plaintiffs assert that service upon Rwabwogo and Adabla can be effected only through "international letters rogatory," which "are delivered to the consulate of the defendants' respective countries, who then may or may not make delivery." (Edozie Serv. Aff. ¶ 17.) Plaintiffs add that "Process Forwarding International, a process service agency that handles all such matters for the Department of Justice (among others), [states] they have never succeeded in serving any individuals in Nigeria, Ghana or Uganda by this method." (Id.) Plaintiffs also contend that service by letters rogatory is "prohibitively expensive, costing over $1,500.00 per party to be served." (Id.) In light of these problems, plaintiffs now move for court-ordered service on Steptoe & Johnson pursuant to Rule 4(f)(3). (Id. ¶¶ 20-21.)

**III. Defendant Nwachukwu's Motion to Dismiss**

The following facts are taken from plaintiff's pleadings,
consisting of the complaint and attached Agreement,[1] and do not
constitute the findings of the Court. On June 29, 2006,
Nwachukwu, Rwabwogo, Roland Ewubare on behalf of SLN, and Edozie
on behalf of the Madu Firm, signed the two-page Agreement at
issue. (Compl. ¶ 8 & Ex. A.) The Agreement provides that
because the Madu Firm had introduced SLN to Rwabwogo and
Nwachukwu had introduced Rwabwogo to SLN, the signatories

> are desirous of a. incorporating an entity
> or subsidiary of SLN called SocketWorks
> Uganda or some other name to operate and
> conduct the business of SLN in Uganda [and]
> b. assisting S[LN] to set up such an entity
> . . . and identifying/introducing S[LN] to
> companies and individuals in Uganda as
> likely business partners, investors or
> clients.

(Compl. Ex. A.)

Pursuant to the Agreement, the signatories may not solicit
or accept outside business relating to the proposed transaction
"without the express written permission of each [p]arty." (Id.
¶ 1.) The Agreement also binds the signatories to
confidentiality "regarding business sources and/or their
identities" and prohibits the signatories from disclosing to
third parties "any names, addresses (including electronic mail
and addresses), telephone, fax or telex numbers of any

---

[1] For the reasons discussed infra, the facts outlined in this section are
taken solely from the complaint and attached Agreement and exclude any new
facts presented in an affidavit and exhibits submitted by John Edozie in
opposition to Nwachukwu's motion to dismiss.

contacts." (Id. ¶¶ 2, 4.) The signatories further covenant

"not [to] circumvent each other or other Parties involved in the

transaction" and not to alter or change "the original

established transaction(s)." (Id. ¶ 3.) The Agreement "is

valid for any and all transactions between the Parties and shall

be in effect for five (5) years from the date of signature,"

with an option to renew. (Id. ¶ 7.) The Agreement contains a

forum selection clause, which requires that any "legal

proceeding regarding this agreement shall take place in the

county of New York." (Id. ¶ 8.) It also contains a choice of

law clause, which states that "[a]ny questions relating to this

agreement shall be interpreted in accordance with the laws of

the State of New York." (Id. ¶ 7.) An indemnification clause

also is included in the Agreement. (Id. ¶ 10.)

This dispute centers upon the remuneration clause in

paragraph five, which states: "All considerations, benefits,

bonds, participators' fees and/or commissions received as a

result of the contributions of the Parties shall be allocated as

mutually agreed upon." (Id. ¶ 5.) Plaintiffs allege that while

they have "duly performed [their] part of the Agreement," the

defendants, despite "frequently ratif[ying] the Agreement and

acknowledg[ing] their liability thereunder, both verbally and in

writing, . . . have breached the Agreement." (Compl. ¶¶ 10-11.)

Plaintiffs further assert that the Agreement extends to the

creation of subsidiaries not only in Uganda, but also in Ghana and Liberia, and that the Agreement provides plaintiffs with shares in all of these subsidiaries, in addition to a finder's fee for "all benefits received by all parties." (Id. ¶ 8.) Plaintiffs add that defendants, "in violation of the Agreement," have transferred to third parties significant equity interest in SLN's subsidiaries in Uganda, Ghana, and Liberia. (Id. ¶ 12.)

On December 5, 2007, plaintiffs initiated this action, alleging that they never received their promised shares or other compensation that defendants allegedly owed to them. On November 24, 2008, defendant Nwachukwu filed this motion to dismiss. In the same month, plaintiffs submitted a motion for court-ordered service. The Court first addresses plaintiffs' motion for court-ordered service and then turns to Nwachukwu's motion to dismiss the complaint.

## DISCUSSION

### I. Court-ordered Service of Process

Plaintiffs move this Court under Rule 4(f)(3) for an order allowing Plaintiffs to make substituted service upon four of the five defendants in this action—Rwabwogo, Adabla, Chife, and SLN. Defendant Nwachukwu, who does not contest service, submits a brief in opposition to plaintiffs' motion for court-ordered service. The Court first addresses whether Nwachukwu has

8

standing to oppose plaintiffs' motion for court-ordered service
and then addresses whether substitute service on the four
defendants at issue is warranted.

## A. Standing of Anthony Nwachukwu to Oppose Plaintiffs' Motion for Court-ordered Service

Nwachukwu submits a Memorandum of Law in Opposition to
Plaintiffs' Motion for Court-Ordered Service and Nwachukwu's
counsel, John D. Lovi, submits a declaration opposing substitute
service on his law firm, Steptoe & Johnson.  Plaintiffs argue
that Nwachukwu does not have standing to oppose plaintiffs'
motion for court-ordered service because Nwachukwu was served
properly.  (Pls.' Reply Mem. of Law in Supp. of Mot. for Court-
Ordered Serv. ("Pls.' Serv. Reply") 5.)  The crux of plaintiffs'
no-standing argument is that, since he is not contesting
service, Nwachukwu does not have an injury needing redress.  See
Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct.
2130, 119 L. Ed. 2d 351 (1992) (stating that constitutional
standing requires, among other things, the party seeking relief
to demonstrate the existence of an injury that "will be
'redressed by a favorable decision'") (quoting Simon v. E. Ky.
Welfare Rights Org., 426 U.S. 26, 38, 96 S. Ct. 1917, 48 L. Ed.
2d 450 (1976)); Moskos v. Suffolk County Prob. Dep't, No. 02
Civ. 5167, 2008 WL 5378364, at *2 (E.D.N.Y. Dec. 22, 2008).

Co-defendants do not have standing to assert improper service claims on behalf of other defendants. Farrell v. Burke, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties."); S.E.C. v. Lines, No. 07 Civ. 11387, 2009 WL 2431976, at *2 (S.D.N.Y. Aug. 7, 2009) (holding that properly-served defendants do not have standing to oppose substitute service on unserved defendants); Sayles v. Pac. Eng'rs & Constructors, Ltd., No. 08 Civ. 676S, 2009 WL 791332, at *5 (W.D.N.Y. Mar. 23, 2009) ("That a defendant received defective process or was insufficiently served with process cannot be asserted by codefendants."); Duttle v. Bandler & Kass, No. 82 Civ. 5084, 1992 WL 162636, at *5 (S.D.N.Y. June 23, 1992) (Wood, J.) (rejecting, on lack of standing grounds, arguments made by properly served defendants that service of process on a different defendant was improper). Where a foreign defendant, "who would have standing to contest . . . any defects in the process or its service[], ha[s] yet to appear. . . . the appearing defendant[] lack[s] standing to raise this objection . . . ." Sayles, 2009 WL 791332, at *7.

Pursuant to the principles outlined above, the Court holds that Nwachukwu does not have standing to oppose plaintiffs' motion for court-ordered service on Nwachukwu's attorney. This

holding, however, does not resolve the matter entirely. This
case presents the unique situation where plaintiffs request
substitute service via counsel of a properly served defendant.
Thus, the relationship between Nwachukwu's counsel, Mr. Lovi of
Steptoe & Johnson, and the four unserved defendants is
particularly relevant. Mr. Lovi submits a separate declaration
in opposition to plaintiffs' motion for court-ordered service,
which addresses the relationship between his law firm and the
four defendants. Were the Court to disregard Mr. Lovi's
representations, it would be hampered in issuing a ruling
grounded on all the facts presented. Therefore, the Court will
treat Mr. Lovi's declaration the way it would treat an affidavit
or letter submitted to the Court—by giving the document the
weight the Court, in its discretion, deems appropriate. See
Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd., No. 81 Civ.
93, 1986 WL 14292, at *2 (S.D.N.Y. Dec. 9, 1986) (considering
affidavit submitted by counsel to a non-party, which stated that
counsel was not authorized to accept service on behalf of the
non-party of a motion for contempt); see also In re Highgate
Equities, Ltd., 257 B.R. 391, 393 (Bankr. S.D.N.Y. 2001)
(stating that where a non-party sends the Court a letter
regarding alleged attorney misconduct, "[j]udges, on receiving
such a letter, especially from a nonparty, remain free to reject
or ignore the letter"); United States v. Carlin, 948 F. Supp.

11

271, 276 n.2 (S.D.N.Y. 1996) (considering on a motion for summary judgment a letter from a non-party attorney who had represented defendant in a previous transaction in holding that the letter fails to "raise[] a genuine issue of material fact that would preclude summary judgment"). While the Court disregards Nwachukwu's brief in opposition to plaintiffs' motion for court-ordered service on lack of standing grounds, it considers Mr. Lovi's declaration on this motion.

## B. Odrek Rwabwogo and Prosper Adabla

Two of the four defendants that Plaintiffs have failed to serve are Rwabwogo, a resident of Uganda, and Adabla, a resident of Ghana. Plaintiffs acknowledge that the Hague Convention does not apply to these countries and submit that there is no other international agreement in place authorizing service to individuals in these countries. (Pls.' Mem. of Law in Supp. of Mot. for Court-Ordered Serv. ("Pls.' Serv. Mem.") 6.) Moreover, plaintiffs contend that service pursuant to Rule 4(f)(2)(B) via letters rogatory is futile and prohibitively expensive. (Id.; Edozie Serv. Aff. ¶ 17.) Plaintiffs, therefore, seek a court order pursuant to Rule 4(f)(3) authorizing substitute service via Steptoe & Johnson.

In support of their motion, plaintiffs assert that Steptoe & Johnson is "clearly actively litigating for the Defendants."

(Edozie Serv. Aff. ¶ 24.) Plaintiffs contend that Steptoe & Johnson has represented "Socketworks Ltd. in []various corporate and regulatory matters." (Id. ¶ 21 & Ex. D.) Moreover, plaintiffs state that the law firm currently is representing Chife "in a case involving Socketworks' United States subsidiary." (Id. ¶ 22 & Ex. E.) Plaintiffs also allege that because Adabla and Rwabwogo "are shareholders of Socketworks[] [and] Steptoe & Johnson represents SocketWorks[,] [o]ne can fairly presume that SocketWorks is able to contact its own shareholders." (Elliott Serv. Aff. ¶ 20.)

Mr. Lovi of Steptoe & Johnson contends that no one at Steptoe & Johnson ever has represented Rwabwogo and Adabla. (Decl. of John D. Lovi in Opp'n to Pls.' Mot. for Court-ordered Serv. ("Lovi Serv. Decl.") ¶ 3.) Moreover, Steptoe & Johnson does not know where they live or work or how to contact them. (Id.)

### 1. Rule 4(f)(3)

A Court may direct service on an individual in a foreign country by any "means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). "Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." KPN B.V. v. Corcyra

13

D.O.O., No. 08 Civ. 1549, 2009 WL 690119, at \*1 (S.D.N.Y. Mar. 16, 2009) (Koeltl, J.) (citation and internal quotation marks omitted). "Even if facially permitted by Rule 4(f)(3)," the proposed means of service "must also comport with constitutional notions of due process," Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002), which require "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Luessenhop v. Clinton County, N.Y., 466 F.3d 259, 269 (2d Cir. 2006) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." RSM Prod. Corp. v. Fridman, No. 06 Civ. 11512, 2007 WL 1515068, at \*1 (S.D.N.Y. May 24, 2007) (citation and internal quotation marks omitted). In exercising this discretion, district courts may "impose a threshold requirement for parties to meet before seeking the court's assistance." Ryan v. Brunswick Corp., No. 02 Civ. 0133E(F), 2002 WL 1628933, at \*2 (W.D.N.Y. May 31, 2002). A district court may require the parties "to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is

14

necessary." Export-Import Bank v. Asia Pulp & Paper Co., Ltd.,
No. 03 Civ. 8554, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005)
(citation and internal quotation marks omitted).  This
requirement, although not expressly provided by Rule 4(f)(3),
"is necessary in order to prevent parties from whimsically
seeking alternate means of service and thereby increasing the
workload of the courts." Brunswick, 2002 WL 1628933, at *2.
Below, the Court analyzes whether plaintiffs reasonably
attempted to effectuate service on defendants and whether
plaintiffs' proposed method of substitute service comports with
due process.

### 2. Application

Plaintiffs have not met their threshold requirement of
reasonably attempting to effect service on defendants Rwabwogo
and Adabla.  Plaintiffs mention that they "have been unable to
serve Defendant Rwabwogo in Uganda or Defendant A[dab]la in
Ghana" without discussing what methods they used to attempt
service on these defendants. (Edozie Aff. ¶ 19; see also Pls.'
Serv. Mem. 3.)  Plaintiffs also make the blanket assertion that
service in Uganda and Ghana via letters rogatory would be
futile. (Pls.' Serv. Mem. 6; Edozie Serv. Aff. ¶ 17.)  While
plaintiffs state that, according to Process Forwarding
International, no individuals have been served successfully in

15

Nigeria, Uganda, or Ghana using letters rogatory, (Edozie Serv. Aff. ¶ 17), they submit no proof to support that this representation actually was made and, more importantly, that its conclusion is accurate. Plaintiffs' unsupported statements do not constitute a reasonable attempt to effectuate service that courts in this Circuit require before obtaining the Court's assistance. See Gateway Overseas, Inc. v. Nishat (Chunian) Ltd., No. 05 Civ. 4260, 2006 WL 2015188, at *4 (S.D.N.Y. July 13, 2006) ("Plaintiff's mere assertion that attempting to serve defendant [in Pakistan] . . . through the Hague Convention would be futile is an insufficient defense to defendant's 12(b)(5) motion."); see also S.E.C. v. Anticevic, No. 05 Civ. 6991, 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) (Wood, J.) (finding good faith efforts made to warrant substitute service where defendant's current address was unknown and plaintiff twice attempted to serve defendant in two different countries); United States v. Shehyn, No. 04 Civ. 2003, 2008 WL 6150322, at *4 (S.D.N.Y. Nov. 26, 2008) (allowing alternative means of service of process where plaintiff used "diligent efforts" to discover defendant, who had continually evaded detection); Swarna v. Al-Awadi, No. 06 Civ. 4880, 2007 WL 2815605, at *1 (S.D.N.Y. Sept. 20, 2007) (authorizing alternative service where "plaintiff has exhausted the possibility of service under subdivision 1 of Rule 4(f)"); Export-Import Bank, 2005 WL 1123755, at *4 (authorizing

16

service where plaintiff "repeatedly attempted to effect service in the manner provided for in each of the transaction documents").

Additionally, plaintiffs have not shown that their proposed method of service satisfies due process. Plaintiff cites RSM Production Corp., 2007 WL 2295907, at *6, for support, stating that "[p]ermitting service upon the defendants through their American counsel is permissible under Rule 4(f)(3)." (Pls.' Serv. Mem. 6.) Unlike the present case, where Steptoe & Johnson does not even know Adabla's or Rwabwogo's contact information, the attorney in RSM had assisted the defendant for years. See RSM, 2007 WL 2295907, at *1. District courts have not authorized service on a lawyer unless there has been adequate communication between the foreign defendant and the lawyer. See, e.g., Kuklachev v. Gelfman, No. 08 Civ. 2214, 2008 WL 5068860, at *4 (E.D.N.Y. Nov. 24, 2008) (prohibiting service on counsel where counsel did not represent defendants and plaintiffs failed to indicate that counsel had "any particular relationship to defendants that would make him likely to apprise defendants of the action"); Ehrenfeld v. Salim a Bin Mahfouz, No. 04 Civ. 9641, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (authorizing service on foreign defendant's United States counsel where counsel was "in communication with Defendant in relation to the pending legal proceedings in the United States .

17

. . and will know how to locate Defendant"); see also Rio
Props., 284 F.3d at 1017 (authorizing service on foreign
defendant's United States counsel where the attorney "had been
specifically consulted by [the defendant] regarding this
lawsuit"); FMAC Loan Receivables v. Dagra, 228 F.R.D. 531, 534
(E.D. Va. 2005) (authorizing service on foreign defendant's
United States lawyer where defendant had been "in constant
communications with his attorney"). Given the absence of
communication between Steptoe & Johnson and Rwabwogo and Adabla,
serving Steptoe & Johnson would not provide notice reasonably
calculated to apprise Rwabwogo and Adabla of the pendency of
this action. Moreover, Steptoe & Johnson noted that the
interests of Rwabwogo or Adabla may conflict with those of its
client, Nwachukwu, precluding the possibility of representing
Rwabwogo or Adabla in this action in the future. (Lovi Serv.
Decl. ¶ 3.)

    For the foregoing reasons, the Court denies plaintiffs'
motion for court-ordered service on defendants Rwabwogo and
Adabla via service on Steptoe & Johnson. The Court grants
plaintiffs sixty (60) days from the date of this Opinion and
Order to re-serve the summons and complaint on Rwabwogo and
Adabla consistent with the Federal Rules of Civil Procedure and
with this Opinion and Order. Failure to effect service within
this time period will result in dismissal without prejudice of

this action as against Rwabwogo and Adabla. See Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972) ("[I]ncomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained."); Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to the United Nations, No. 05 Civ. 2591, 2005 WL 1621342, at *5 (S.D.N.Y. July 12, 2005) (dismissing complaint without prejudice for improper service unless plaintiff properly serves defendant within sixty days).

## C. Aloy Chife

While acknowledging that Aloy Chife "is a permanent resident alien of the United States who resides in Texas," (Pls.' Serv. Mem. 4; Edozie Serv. Aff. ¶ 6), plaintiffs move for substitute service on Chife pursuant to Rule 4(f)(3), which governs service in a foreign country. Because Chife is a permanent resident alien of the United States, the proper analysis is under Rule 4(e), which provides several methods of serving individuals located within a judicial district of the United States.

### 1. Rule 4(e)

Rule 4(e)(1) provides that an individual may be served in a judicial district of the United States pursuant to the law of the forum state or pursuant to the law of the state where

19

service is made. See Fed. R. Civ. P. 4(e)(1). In New York, the forum state, service of process upon a natural person may be effected by: (1) personal service within the state; (2) delivering the summons within the state to a person of suitable age and discretion at the individual's actual place of business, dwelling, or usual abode as well as mailing it to the individual; (3) delivering the summons within the state to the individual's agent; (4) where service under (1) and (2) cannot be made after due diligence, affixing the summons to the individual's actual place of business, dwelling, or usual abode as well as mailing it to the individual; or (5) in such manner as the court directs if service is impracticable under (1), (2), and (4). See N.Y. C.P.L.R. § 308. The meaning of "impracticable" under section 308(5) depends on the facts and circumstances of a particular case. Rampersad v. Deutsche Bank Sec., Inc., No. 02 Civ. 7311, 2003 WL 21073951, at *1 (S.D.N.Y. May 9, 2003). In general, a plaintiff "'must make some showing that the other prescribed methods of service could not be made.'" S.E.C. v. Nnebe, No. 01 Civ. 5247, 2003 WL 402377, at *3 (S.D.N.Y. Feb. 21, 2003) (quoting Markoff v. S. Nassau Cmty. Hosp., 458 N.Y.S.2d 672, 673, 91 A.D.2d 1064 (App. Div. 1983)); see also Franklin v. Winard, 592 N.Y.S.2d 726, 727, 189 A.D.2d 717 (App. Div. 1993) (finding that plaintiff demonstrated service by conventional means was "impracticable" by making

diligent, albeit unsuccessful, efforts to obtain information regarding defendant's current residence, business address, or place of abode).

Rule 4(e)(2) permits service in a judicial district of the United States by: (A) delivering a copy of the summons and complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2).

Plaintiffs have failed to serve Chife within a judicial district of the United States under Rule 4(e)(1) or (2). Pursuant to Rule 4(e)(1), plaintiffs have not demonstrated that traditional service would be impracticable under New York law, as set forth in C.P.L.R. § 308. See Kuklachev, 2008 WL 5068860, at *4 ("Plaintiffs have not made the proper showing that the other available methods of service [under N.Y. C.P.L.R. § 308] cannot be made."); Yamamoto v. Yamamoto, 842 N.Y.S.2d 10, 11, 43 A.D.3d 372 (App. Div. 2007) (upholding trial court's denial of plaintiff's § 308(5) request because plaintiff had not shown that personal service upon the defendant in Japan would be "impracticable"); c.f. D.R.I., Inc., v. Dennis, No. 03 Civ. 10026, 2004 WL 1237511, at *1 (S.D.N.Y. June 3, 2004) (Leisure,

J.) (holding that "[p]laintiff has shown that service is
impracticable under the methods specified by New York and
Federal Rules of Civil Procedure" where plaintiff attempted
unsuccessfully to serve defendant personally at his last known
address, performed a "skip trace" search using a process server,
and performed searches on the internet); Nnebe, 2003 WL 402377,
at *3 (finding service impracticable where plaintiff sent
process servers to several different addresses, searched
relevant computer databases, and inquired with the U.S. Postal
Service). Plaintiffs also have not submitted proof of any
attempts to serve Chife in Texas where he resides pursuant to
Rule 4(e)(2). Plaintiffs' failure to attempt domestic service
on Chife does not meet the threshold showing necessary to obtain
court-ordered service. The Court next considers what
consequence is appropriate given plaintiffs' failure to serve
Chife timely in the one year between the commencement of this
action and the filing of plaintiffs' motion for court-ordered
service.


## 2. Rule 4(m)

Rule 4(m) provides that if service is not made on a
defendant within 120 days of filing the complaint, the Court
"must dismiss the action without prejudice against that
defendant or order that service be made within a specified

22

time."[2]  Fed. R. Civ. P. 4(m).  But "if the plaintiff shows good

cause for the failure, the court must extend the time for

service for an appropriate period." Id.  In determining whether

a plaintiff has shown good cause, courts in this Circuit

consider whether the (1) plaintiff made reasonable efforts to

serve the defendant and (2) defendant was prejudiced by the

delay in service.  See Shider v. Commc'ns Workers of Am., No. 95

Civ. 4908, 1999 WL 673345, at *2 (S.D.N.Y. Aug. 30, 1999)

(Sotomayor, J.).

     Although plaintiffs are silent as to why they failed to

serve Chife in Texas, they state that they served Chife in

Nigeria and submit an affidavit from a "senior litigation

officer" of a Nigerian law firm, attesting that Chife was served

with the complaint on December 11, 2007.  (Edozie Serv. Aff. ¶

18, Ex. C.)  Plaintiffs, however, do not submit any evidence

that such service is consistent with Nigerian law under Rule

4(f)(2) and concede that Chife rejected such service as

improper.  (Id. ¶ 18).  Notwithstanding plaintiffs' failure to

demonstrate good cause for not serving Chife in Texas, there is

no evidence that Chife was prejudiced by this delay.  As a

result, the Court denies plaintiffs' motion for substitute

---

[2] There is no time limit by which service must be effected on a defendant in a
foreign country pursuant to Rule 4(f).  See Shehyn, 2008 WL 6150322, at *4;
Aqua Shield, Inc., v. Inter Pool Cover Team, No. 05 Civ. 4880, 2007 WL
4326793, at *2 (S.D.N.Y. Dec. 7, 2007).  Because Chife resides in Texas,
however, the 120-day time limit applies to him.

service on Chife via Steptoe & Johnson but grants plaintiffs
sixty (60) days from the date of this Opinion and Order to serve
Chife pursuant to Rule 4(e) and file proof of service with this
Court. Failure to serve and file proof of service within this
time period will result in dismissal of the complaint without
prejudice as against Chife.

## D. SocketWorks Limited Nigeria

SLN is a Nigerian corporation. Rule 4(h) provides the
mechanism for serving a corporation inside and outside of a
judicial district of the United States. See Fed. R. Civ. P.
4(h)(1) & (2). Accordingly, the Court looks to Rule 4(h) to
determine whether plaintiffs have made reasonable efforts to
serve SLN such that a court order allowing substitute service is
warranted under Rule 4(f)(3).

### 1. Rule 4(h)

A foreign corporation may be served in a judicial district
of the United States: (A) pursuant to the law of the forum
state or the law of the state where service is made; or (B) by
delivering a copy of the summons and complaint to an officer or
agent authorized to receive service of process. Id. 4(h)(1). A
foreign corporation also may be served outside the United States

24

in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery. Id. 4(h)(2).

As already discussed, before issuing an order for substitute service under Rule 4(f)(3), a district court may require plaintiffs to show that they have attempted to effect service and that the district court's intervention is necessary. See Export-Import Bank, 2005 WL 1123755, at *4; Brunswick, 2002 WL 1628933, at *2. Below, the Court analyzes whether plaintiffs reasonably attempted to effectuate service on defendants and whether plaintiffs' proposed method of substitute service comports with due process.

### 2. Application

Plaintiffs acknowledge that SocketWorks has a U.S. subsidiary. (See Edozie Serv. Aff. ¶ 22.) Plaintiffs, however, have not attempted service on SLN through its U.S. subsidiary or through Chife, SLN's Chief Executive Officer, in Texas in accordance with Rule 4(h)(1). See Fed. R. Civ. P. 4(h)(1) (authorizing service on a foreign corporation by delivering a summons and complaint to an officer or any other agent of the corporation in the United States); see also Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 707-08, 108 S. Ct. 2104, 100 L.Ed.2d 722 (1988) (upholding service of process on West German manufacturer's wholly owned American subsidiary); In

re Grand Jury Subpoenas Issued to Thirteen Corps., 775 F.2d 43, 46 (2d Cir. 1985) ("A corporation may be served through an officer or agent explicitly or implicitly authorized to accept service of process."); Boryk v. deHavilland Aircraft Co., 341 F.2d 666, 668-69 (2d Cir. 1965) (finding service of process on president of a U.S. subsidiary of a foreign corporation adequate and noting that the label attached to the agent and the agent's lack of explicit authority to accept service was not determinative); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2009 WL 2972518, at *14 (S.D.N.Y. Sept. 16, 2009) (Leisure, J.) (permitting service of subpoenas on domestic affiliates of foreign corporations).

Also, plaintiffs fail to demonstrate that they attempted to serve SLN outside the United States consistent with Rule 4(f). See Fed. R. Civ. P. 4(h)(2). While plaintiffs state that they hired a Nigerian law firm to serve SLN in Nigeria and submit an affidavit of service in support, they do not submit any evidence that such service is consistent with Nigerian law under Rule 4(f)(2) and concede that SLN rejected such service as improper. (Pls.' Serv. Mem. 3; Edozie Serv. Aff. ¶ 18, Ex. C.) Because plaintiffs have not demonstrated why service of SLN through its U.S. subsidiary or through its CEO in Texas would be ineffective, and have not submitted evidence that their attempted service of SLN in Nigeria is consistent with Nigerian

law, they have not satisfied the Court's threshold requirement before seeking the Court's assistance.

Moreover, ordering service upon Steptoe & Johnson on behalf of SLN may not satisfy constitutional due process. District courts in this Circuit have not authorized service on a foreign defendant through his American lawyer unless there has been adequate communication between the foreign defendant and counsel. See United States v. Machat, No. 08 Civ. 7936, 2009 WL 3029303, at *1, 4 (S.D.N.Y. Sept. 21, 2009) (Koeltl, J.) (permitting service of process on attorney who made appearances on behalf of foreign defendant, a citizen of Ireland with no residence in the United States who previously resisted service); KPN B.V., 2009 WL 690119, at *2 (permitting service of process on two foreign defendants through their New York counsel where plaintiff made diligent efforts to serve defendants on at least six occasions and New York counsel "plainly [is] in contact with [defendants]"); Arista Records LLC v. Media Servs. LLC, No. 06 Civ. 15319, 2008 WL 563470, at *1-2 (S.D.N.Y. Feb. 25, 2008) (authorizing service on defendant, a Russian corporation, through its American counsel who made a limited appearance on behalf of the defendant); accord Rio Props., 284 F.3d at 1017 (authorizing service on foreign defendant's U.S. lawyer where the attorney "had been specifically consulted by [the defendant] regarding this lawsuit"); FMAC, 228 F.R.D. at 534 (authorizing

service on foreign defendant's U.S. lawyer where defendant had been "in constant communications with his attorney"). Here, although Steptoe & Johnson has represented SocketWorks "in connection with various corporate and regulatory matters," it "has never represented SocketWorks in connection with any litigation, and it is not now representing SocketWorks in this litigation," not even in a limited capacity. (Lovi Serv. Decl. ¶ 4.) Plaintiffs do not provide any more information to demonstrate a closer relationship between SLN and Steptoe & Johnson. Based on the information before the Court, the relationship between SLN and Steptoe & Johnson appears more tenuous than the attorney-client relationships in cases in this Circuit that have permitted substitute service on a foreign defendant's American counsel. Therefore, plaintiffs have not demonstrated that service on Steptoe & Johnson satisfies due process.

For the foregoing reasons, the Court denies plaintiffs' motion for court-ordered service on defendants Rwabwogo, Adabla, Chife, and SLN via service on Steptoe & Johnson. The Court grants plaintiffs sixty (60) days from the date of this Opinion and Order to re-serve and file proof of service of the summons and complaint on Rwabwogo, Adabla, Chife, and SLN consistent with the Federal Rules of Civil Procedure and this Opinion and Order. Failure to effect service within this time period will

result in dismissal without prejudice of this action as against
these four defendants.

The Court now turns to the motion to dismiss brought by the
one properly served defendant in this case—Nwachukwu.

## II. **Nwachukwu's Motion to Dismiss**

Before turning to the merits of Nwachukwu's motion to
dismiss, the Court first determines whether plaintiff John
Edozie has standing to bring this action against Nwachukwu.
Second, the Court addresses the legal standard for analyzing
motions to dismiss. Third, the Court turns to whether new
documents submitted by plaintiffs should be considered part of
the pleadings for purposes of this motion to dismiss. Finally,
the Court addresses whether plaintiffs plead properly the
existence of an enforceable contract and breach of that
contract.

### A. Standing of John Edozie

Two plaintiffs—the Madu Firm and John Edozie—bring the instant
action against Nwachukwu. Nwachukwu challenges Edozie's
standing to bring this action, contending that because Edozie
signed the Agreement on behalf of the Madu Firm, only the Firm
is the party in interest with standing to bring a claim. (See
Nwachukwu's Mem. of Law in Supp. of His Mot. to Dismiss Compl.

("Def.'s MTD Mem.") 6-7; Reply Mem. of Law of Nwachukwu in Further Supp. of His Mot. to Dismiss Compl. ("Def.'s MTD Reply") 8.) Plaintiffs contend that Edozie does have standing in his individual capacity as a member of the Madu Firm. (Pls.' Mem. of Law in Opp'n to Nwachukwu's Mot. to Dismiss ("Pls.' MTD Opp'n") 15.)

## 1. Law on Standing

On a motion to dismiss, it is the burden of the party who seeks standing to sue to allege clearly facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. See Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 438 (S.D.N.Y. 2006) (Leisure, J.). Standing cannot be inferred from averments in the pleadings, but rather must appear affirmatively in the record. Id. With some inapplicable exceptions, the general New York Business Corporation Law, rather than partnership law,[3] applies to professional service corporations such as the Madu Firm. See N.Y. Bus. Corp. Law § 1513; see also Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc., 710 F.2d 87, 89 (2d Cir. 1983) ("[T]he provisions of New

---

[3] In support of their respective positions regarding Edozie's standing, the parties erroneously cite cases applying New York partnership law. See Burton Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48 (2d Cir. 2000); Poley v. Sony Music Entm't, Inc., 636 N.Y.S.2d 10, 222 A.D.2d 308 (App. Div. 1995); Gmerek v. Scrivner, Inc., 634 N.Y.S.2d 299, 221 A.D.2d 991 (App. Div. 1995); Stevens v. St. Joseph's Hosp., 381 N.Y.S.2d 927, 52 A.D.2d 722 (App. Div. 1976); Kirschbaum v. Merchs. Bank of N.Y., 71 N.Y.S.2d 79, 272 A.D. 336 (App. Div. 1947).

30

York's Business Corporation Law applicable to ordinary business corporations are also applicable to professional corporations."); Moll v. U.S. Life Title Ins. Co. of N.Y., 113 F.R.D. 625, 630 (S.D.N.Y. 1987); We'Re Assocs. Co. v. Cohen, Stracher & Bloom, P.C., 478 N.Y.S.2d 670, 673, 103 A.D.2d 130 (App. Div. 1984). "A party who signs a contract in his corporate capacity generally lacks standing to enforce that contract in an individual capacity." Henneberry, F. Supp. 2d at 458; see also Kirby v. Coastal Sales Ass'n Inc., 82 F. Supp. 2d 193, 197 (S.D.N.Y. 2000) ("Under New York law, where a party to a contract signs the document only in his capacity as corporate officer, he may not maintain an action on the contract in his individual capacity."); Gen. Motors Acceptance Corp. v. Kalkstein, 474 N.Y.S.2d 493, 495, 101 A.D.2d 102 (App. Div. 1984) ("The documentary evidence indicates that Marvin signed the agreement with GM in his corporate capacity as president of Blair. That agreement can in no way be construed as a contract with him personally."). A signatory may have individual standing to enforce a contract signed on behalf of a corporation where a defendant has breached a duty owed to the signatory independent of any duty owed to the corporation. See Behrens v. Metro. Opera Ass'n, Inc., 794 N.Y.S.2d 301, 303, 18 A.D.3d 47 (App. Div. 2005). Individual standing also may exist where there is "clear and explicit evidence of the defendant's intent

to add personal liability to the liability of the entity."
Henneberry, 415 F. Supp. 2d at 458 (internal quotation marks
omitted) (citing Mason Tenders Dist. Council Welfare Fund v.
Thomsen Constr. Co., 301 F.3d 50, 53 (2d Cir. 2002)). Where a
corporation brings suit directly, a shareholder of that
corporation, absent an independent claim, does not have standing
to join the suit derivatively on the corporation's behalf. See
Timely Drive-In Cleaning Corp. v. Jacobs, 190 N.Y.S.2d 194, 196,
21 Misc. 2d 1052 (Sup. Ct. 1959) ("It is a settled rule that
stockholders may not join with the corporation in bringing suit
and it is only because the corporation fails to do so that a
stockholder may bring suit."); see also Gen. Inv. Corp. v.
Addinsell, 7 N.Y.S.2d 377, 378, 255 A.D. 319 (App. Div. 1938)
("A derivative stockholder's action will not lie where the
corporation, for the benefit of which the action is instituted,
elects to bring suit itself."); Bolmer Constr. Co. v. 9 Kew
Gardens Rd. Corp., 82 N.Y.S.2d 632, 633 (Sup. Ct. 1948)
("[S]tockholders of a corporation may not join with the
corporation in bringing suit and [] it is only because the
corporation fails to do so that a stockholder may bring suit.")
(emphasis in original).

2. Application

Because Edozie signed the Agreement on behalf of the Madu
Firm, and not individually, Edozie has no standing to bring this
action.  Plaintiffs fail to demonstrate through clear and
explicit evidence that Nwachukwu has a duty to Edozie
independent of the Madu Firm or that Nwachukwu intended Edozie
to be personally liable under the Agreement.  Henneberry, 415 F.
Supp. 2d at 458; Behrens, 794 N.Y.S.2d at 303.  For the first
time in their memorandum of law in opposition to Nwachukwu's
motion to dismiss, plaintiffs claim that "the email trail
between Messrs. Edozie and Nwachukwu forms a separate agreement
that Mr. Edozie is a party to in his individual capacity."
(Pls.' MTD Opp'n 16.)  However, such an individual claim is not
alleged in the complaint and, for the reasons discussed infra,
the Court declines to consider the e-mails that Edozie submitted
to the Court for the first time in an affidavit in opposition to
Nwachukwu's motion to dismiss.  To the extent that Edozie seeks
standing to bring a claim on behalf of the Madu Firm, such
standing does not lie here where the Madu Firm already brought a
direct claim.  See Bolmer, 82 N.Y.S.2d at 633-34 (stating that
derivative claims are appropriate only where a corporation fails
to bring suit).

     Because the complaint fails to state an injury to Edozie in
his individual capacity and because Edozie may not bring a
derivative claim on behalf of the Madu Firm—which already has

33

brought a direct claim—Edozie is dismissed as a plaintiff for
lack of standing, subject to repleading consistent with the
Court's instructions infra.[4]  The Court now turns to the legal
standard governing motions to dismiss and to an analysis of
whether the pleadings properly state a claim against Nwachukwu.

## B. Motion to Dismiss Standard

Nwachukwu moves to dismiss the complaint for failure to
state a claim upon which relief can be granted.  Fed. R. Civ. P.
12(b)(6).  On a motion to dismiss, the Court considers "all
'well-pleaded factual allegations' to be true [to] 'determine
whether they plausibly give rise to an entitlement to relief.'"
Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009)
(quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d
868 (2009)).  In Iqbal, the Supreme Court set out a two-pronged
analysis to determine whether pleadings meet this plausibility
standard.  First, a court "can choose to begin by identifying
pleadings that, because they are no more than conclusions, are
not entitled to the assumption of truth."  Iqbal, 129 S. Ct. at
1950; see also United States v. Lloyds TSB Bank PLC, 639 F.
Supp. 2d 326, 338-39 (S.D.N.Y. 2009) (same).  "While legal
conclusions can provide the framework of a complaint, they must

---

[4] Although only the Madu Firm remains as plaintiff, for consistency with the
previous portions of this decision, the Court will continue to use the term
"plaintiffs."

be supported by factual allegations." Iqbal, 129 S. Ct. at 1950.
Second, "[w]hen there are well-pleaded factual allegations, a
court should assume their veracity and then determine whether
they plausibly give rise to an entitlement to relief." Iqbal,
129 S. Ct. at 1950; see also Lloyds TSB, 639 F. Supp. 2d at 339
(same). "Determining whether a complaint states a plausible
claim for relief will . . . be a context-specific task that
requires the reviewing court to draw on its judicial experience
and common sense." Iqbal, 129 S. Ct. at 1950; S. Cherry St.,
LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009)
(same). "If, on a motion under Rule 12(b)(6) . . ., matters
outside the pleadings are presented to and not excluded by the
court, the motion must be treated as one for summary judgment
under Rule 56" and "[a]ll parties must be given a reasonable
opportunity to present all the material that is pertinent to the
motion." Fed. R. Civ. P. 12(d).


1. Law on Consideration of Documents Outside the Pleadings

In their brief in opposition to Nwachukwu's motion to
dismiss, plaintiffs attach an affidavit of John Edozie and
thirteen exhibits, mainly in the form of e-mails between Edozie
and the defendants, including Nwachukwu, that were not presented

to the Court previously ("Edozie Affidavit and Exhibits").[5] The
Court's treatment of these new materials is governed by Rule
12(d). Pursuant to Rule 12(d), the Court must determine whether
the newly presented documents are (1) part of the pleadings such
that the Court may consider them as part of the instant motion;
(2) not part of the pleadings such that the documents should be
excluded in deciding this motion to dismiss; or (3) not part of
the pleadings but should be considered by converting the instant
motion to dismiss to one for summary judgment. The Court finds
the second approach appropriate here.

"[T]ypically the problems associated with extraneous
material at the motion to dismiss stage arise because a
defendant has submitted evidence in support of a motion to
dismiss, rather than because a plaintiff has submitted evidence
in opposition to a motion to dismiss." Adams v. Crystal City
Marriott Hotel, No. 02 Civ. 10258, 2004 WL 744489, at *3
(S.D.N.Y. Apr. 6, 2004) (Leisure, J.). The present dispute
presents the atypical situation where plaintiffs submit
extrinsic documents in their opposition to Nwachukwu's motion to
dismiss.

_____

[5] Exhibit A to the Edozie Affidavit is a copy of the complaint. Edozie
apparently intended for Exhibit B to be a copy of the Agreement at issue in
this case. (See Edozie Aff. & Exs. ¶ 4.) However, the attached document,
titled "Mutual Non-Circumvention Agreement," is an unrelated contract between
the Madu Firm and a non-party to this action. (Id. Ex. B.) Exhibits C
through M are e-mails and e-mail attachments. (Id. Exs. C—M.)

36

Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss); S B ICE, LLC v. MGN, LLC, No. 08 Civ 3164, 2008 WL 4682152, at *1 n.1 (S.D.N.Y. Oct. 20, 2008) (considering only the complaint, exhibits attached to the complaint, and documents integral to the complaint where plaintiff attached extrinsic evidence to its opposition to defendants' motion to dismiss without attempting to amend its complaint); Ahart v. Willingham, No. 05 Civ. 1016, 2007 WL 842006, at *5 (D. Conn. Mar. 15, 2007) ("A complaint . . . cannot be amended by a memorandum in opposition to a motion to dismiss."). However, if the extrinsic evidence is a part of the pleadings, it may be considered on a motion to dismiss. Pleadings include not just the four corners of the complaint, but also "'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)); Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (same); see also Fed. R. Civ. P. 10(c). "Even where a document is not

incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers, 282 F.3d at 153 (quoting Int'l Audiotext, 62 F.3d at 72). Therefore, the Court may consider the Edozie Affidavit and Exhibits as part of the pleadings if these documents either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint.

Whether a document is attached to a complaint is self evident. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (stating that any written instrument attached as an exhibit to a complaint is deemed part of the pleadings). To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003); see also B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F. Supp. 162, 167 (S.D.N.Y. 1995) (Leisure, J.) ("[A] clear and definite reference to extraneous submissions not attached to the complaint is necessary for a plaintiff to assure their consideration in a motion to dismiss."). "[L]imited quotation" of documents not attached to the complaint "does not constitute incorporation by reference." Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985); see also

In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 299
n.39 (S.D.N.Y. 2008) ("[The extraneous document] was not
attached to the [complaint] or quoted in full therein. . . .
Plaintiffs' limited and indirect citations to [this document] .
. . do not constitute incorporation by reference."). To be
integral to a complaint, the plaintiff must have (1) "actual
notice" of the extraneous information and (2) "'relied upon
th[e] documents in framing the complaint.'" Chambers, 282 F.3d
at 153 (quoting Cortec, 949 F.2d at 48). "[M]ere notice or
possession is not enough" for a court to treat an extraneous
document as integral to a complaint; the complaint must "'rel[y]
heavily upon [the document's] terms and effect'" for that
document to be integral. Id. (quoting Int'l Audiotext, 62 F.3d
at 72). Even if a document meets the twin requirements of
integrality—reliance and notice—a court still may not consider
it on a motion to dismiss if there is a dispute "regarding the
authenticity or accuracy of the document" or "the relevance of
the document" to the dispute. Faulkner v. Beer, 463 F.3d 130,
134 (2d Cir. 2006).


## 2. Application

Neither party disputes that the Agreement, which was
attached to the complaint, is part of the pleadings. (See
Def.'s MTD Mem. 2 n.1.) The parties disagree, however, over the

propriety of considering the Edozie Affidavit and Exhibits as part of the pleadings. Nwachukwu argues that these documents, which were not attached to the original complaint, cannot be considered incorporated by reference where plaintiffs fail even to make "passing reference" to them in their complaint and where "Nwachukwu's motion to dismiss relies only upon the Complaint . . . and the Agreement attached to [it]." (See Def.'s MTD Reply 4, 5.) Plaintiffs state that the "e-mails are clearly integral to the Complaint and [Nwachukwu] cannot dispute their authenticity or accuracy." (Pls.' MTD Opp'n 9.)

In this case, plaintiffs' complaint makes no explicit reference to, nor does it quote at all from, the Edozie Affidavit and Exhibits. Plaintiffs only make a single implicit reference to the e-mail correspondence, at it pertains to Nwachukwu,[6] by alleging that "Defendants have frequently ratified the Agreement and acknowledged their liability thereunder, both verbally and in writing." (Compl. ¶ 11.) This scant reference does not meet the high bar courts have set to recognize documents extraneous to a complaint as "incorporated in it by reference." See Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 156 (2d Cir. 2006) (holding that a complaint's

---

[6] Plaintiffs also allege that co-defendants Adabla and Chife corresponded regarding the Agreement—an allegation that may be construed as referring to some of the e-mails attached to the Edozie Affidavit and Exhibits. (See Compl. ¶¶ 50-51, 98.) However, Adabla and Chife are not parties to this motion.

reference to a guilty plea does not make the transcript of the plea proffer integral to the complaint); Adams, 2004 WL 744489, at *3 (declining to consider a "certification" attached to plaintiff's opposition to defendant's motion to dismiss because it neither was attached nor incorporated by reference to the complaint); Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (holding that an extraneous document was not incorporated by a brief reference to it in one paragraph of the complaint). The Court concludes that the Edozie Affidavit and Exhibits are not incorporated into the complaint by reference.

Next, the Court considers whether these extraneous documents are "integral" to plaintiffs' complaint. The parties do not challenge the "authenticity or accuracy" of the extrinsic documents, see Faulkner, 463 F.3d at 134. Also, there is no dispute that, pursuant to the first prong of the integrality test, plaintiffs had "actual notice" of the extraneous information since they enclosed the extrinsic documents with their opposition brief. Chambers, 282 F.3d at 153. Plaintiffs, however, are unable to satisfy the second integrality prong—reliance upon the documents in framing their complaint. Id. While plaintiffs' complaint references facts only present in the extraneous documents, plaintiffs do not "'rel[y] heavily upon [the documents'] terms and effect[s].'" Id. (quoting Int'l

41

Audiotext, 62 F.3d at 72). Not only does the complaint lack any quotations from the e-mails, it fails even to include the term "e-mail." Also, although Nwachukwu had an opportunity in his reply brief to respond to the new evidence in the Edozie Affidavit and Exhibits, he did not rely on this evidence in bringing his motion to dismiss and did not submit his own extrinsic evidence. (See Def.'s MTD Reply 5.) Therefore, considering these documents in deciding the instant motion to dismiss may be prejudicial to Nwachukwu.

For the foregoing reasons, the Court holds that the Edozie Affidavit and Exhibits are neither incorporated by reference nor integral to the complaint and, thus, will not be treated as part of the pleadings in deciding this motion to dismiss. The Court also declines to convert the instant motion into a motion for summary judgment since discovery has not yet commenced. See Davidson v. Citicorp/Citibank, No. 90 Civ. 0941, 1990 WL 176426, at *2 (S.D.N.Y. Nov. 8, 1990) (Leisure, J.) ("[A]s no discovery has taken place, the Court is reluctant to convert this motion into a motion for summary judgment."). The Court leaves open the opportunity for plaintiffs to plead the facts submitted in Edozie's Affidavit and Exhibits in an amended complaint and grants plaintiffs thirty (30) days leave to replead. See Ahart, 2007 WL 842006, at *5 (declining to consider a report that pro se plaintiff submitted in opposition to defendant's motion to

dismiss that "more fully articulates [plaintiff's] allegations" and, instead, granting plaintiff thirty days leave to amend her complaint "to allege further facts to support her claims").

The Court now turns to plaintiffs' claims against Nwachukwu and determines whether they plausibly state a cause of action against Nwachukwu.

## C. Plaintiffs' Causes of Action Against Nwachukwu

Plaintiffs bring twenty causes of action against defendants. All of the causes of action are predicated on the existence and subsequent breach of an enforceable contract. Plaintiffs do not organize their claims according to which defendant(s) the claims are directed. However, upon a broad reading, nineteen of the twenty causes of action appear to be directed at Nwachukwu. For the reasons set forth below, causes of action 1-19 are dismissed under Rule 12(b)(6) for failure to state a claim and cause of action 20 is dismissed as against Nwachukwu because it is not directed at him.

Plaintiffs generally allege that "[t]here was and is a valid, binding and enforceable Agreement" that "[d]efendants have breached," and, "[a]s a direct and proximate result of Defendants' breach," plaintiffs are entitled to "an amount to be determined, but believed to be in excess of Five Million Dollars." (Compl. ¶¶ 14-16). More specifically, plaintiffs

43

allege that Nwachukwu breached the Agreement by failing to
provide plaintiffs a finder's fee in the form of money as well
as stock in SLN (causes of action 15-16) and SLN subsidiaries in
Uganda (causes of action 1-4), Ghana (causes of action 5-11),
and Liberia (causes of action 12-14 and 17-19). As a remedy for
the alleged breach, plaintiffs request a variety of relief,
including damages, declaratory judgment, constructive trust,
preliminary and permanent injunction, and accounting. In
determining whether plaintiffs sufficiently plead a breach of
contract claim, the Court first determines whether the complaint
plausibly alleges the existence of a binding agreement.

### 1. New York Law on Breach of Contract

To state a claim for breach of contract under New York law,
a plaintiff must plead "'(1) a contract; (2) performance of the
contract by one party; (3) breach by the other party; and (4)
damages.'" Rosenblatt v. Christie, 195 Fed. Appx. 11, 12 (2d
Cir. 2006) (quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d
522, 525 (2d Cir. 1994)). "'To create a binding contract, there
must be a manifestation of mutual assent sufficiently definite
to assure that the parties are truly in agreement with respect
to all material terms.'" Tractebel Energy Mktg., Inc. v. AEP
Power Mktg., Inc., 487 F.3d 89, 95 (2d Cir. 2007) (quoting
Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.,

93 N.Y.2d 584, 589, 715 N.E.2d 1050 (1999); United Res. Recovery

Corp. v. Ramko Venture Mgmt., Inc., No. 07 Civ. 9452, 2009 WL

2746232, at *5 (S.D.N.Y. Aug. 28, 2009) ("[A] party's subjective

belief as to what was agreed to or intended is not

controlling."); Rosoff v. Mountain Laurel Ctr. for Performing

Arts, 317 F. Supp. 2d 493, 499 (S.D.N.Y. 2004) (finding

"statements of belief or understanding . . . immaterial in view

of the well established principle that the controlling intention

is that which is discerned from the parties' objective

manifestations of agreement, not subjective, uncommunicated

intentions or beliefs"). "The consideration to be paid under a

contract is a material term." GEM Advisors, Inc. v. Corporacion

Sidenor, S.A., -- F. Supp. 2d --, 2009 WL 3459187, at *12

(S.D.N.Y. Oct. 27, 2009); see also Major League Baseball Props.,

Inc. v. Opening Day Prods., Inc., 385 F. Supp. 2d 256, 271

(S.D.N.Y. 2005) ("Price or compensation are material terms in a

contract requiring definiteness."). A finder's fee, which is in

dispute here, is a material term that must be specified to

create a binding contract. See Hunter v. Greene, 734 F.2d 896,

900 (2d Cir. 1984) (dismissing contract claim on grounds that

the alleged agreement to pay plaintiff a finder's fee was

unenforceable where it lacked a material term—the price of the

finder's fee); Vioni v. Am. Capital Strategies Ltd., No. 08 Civ.

2950, 2009 WL 174937, at *3 (S.D.N.Y. Jan. 23, 2009)

("Compensation is a material term of a finder's fee agreement, . . . and absent a 'meeting of the minds' on this term, a contract is unenforceable.").

Preliminary agreements ordinarily do not create binding contracts, except in certain circumstances. See Brown v. Cara, 420 F.3d 148, 153 (2d Cir. 2005); Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 548 (2d Cir. 1998). There are two types of preliminary agreements that create binding contracts. A "Type I" preliminary agreement is a complete agreement, "reflecting a meeting of the minds on 'all the issues perceived to require negotiation.'" Brown, 420 F.3d at 153 (quoting Teachers Ins. & Annuity Ass'n v. Tribune Co., 670 F. Supp. 491, 498 (S.D.N.Y. 1987)). Because it is complete, a Type I preliminary agreement "binds both sides to their ultimate contractual objective," Adjustrite, 145 F.3d at 548, and is preliminary "only in the sense that the parties desire a more elaborate formalization of the agreement," Tribune, 670 F. Supp. at 498. A "Type II" preliminary agreement, by contrast, "is binding only to a certain degree," because it reflects agreement "on certain major terms, but leave[s] other terms open for further negotiation." Adjustrite, 145 F.3d at 548; see also Brown, 420 F.3d at 153. A Type II agreement does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate open issues in good faith.

Adjustrite, 145 F.3d at 548. If a final contract is not agreed upon following the Type II agreement, the parties may abandon the transaction as long as they have made a good faith effort to close the deal and have not insisted on conditions that do not conform to the preliminary writing. Id.

When deciding whether an agreement is a Type I preliminary agreement, courts consider the following four factors: (i) whether there is an expressed reservation of the right not to be bound in the absence of a writing; (ii) whether there has been partial performance of the contract; (iii) whether all of the terms of the alleged contract have been agreed upon; and (iv) whether the agreement at issue is the type of contract that usually is committed to writing. See Vacold LLC v. Cerami, 545 F.3d 114, 125 n.2 (2d Cir. 2008); Brown, 420 F.3d at 154. When considering whether an agreement is a Type II agreement, courts consider: (i) whether the intent to be bound is revealed by the language of the agreement; (ii) the context of the negotiations; (iii) the existence of open terms; (iv) partial performance; and (v) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions. See Vacold, 545 F.3d at 125 n.2; Brown, 420 F.3d at 157. The first factor of each test—namely, whether the language of the agreement evinces an intent to be bound—is the most important. See Tribune, 670 F. Supp. at 499.

## 2. Plaintiffs Fail to State a Breach of Contract Claim

Nwachukwu argues that because paragraph five of the

Agreement does not specify the terms of a finder's fee or,

indeed, of any compensation, the Agreement excludes a material

term and, therefore, is not enforceable.[7]   (See Def.'s MTD Mem.

5-6.)   Plaintiffs contend that the Agreement is a binding Type

II[8] preliminary agreement and

> the fact that the parties' agreement to pay
> Plaintiffs finders fees left the amount for
> later determination does not nullify the
> agreement; rather, it obligates Defendants
> to negotiate the amount of such fees in good
> faith to achieve the parties' goal of paying
> finders fees to Plaintiffs to compensate for
> the introductions.

(Pls.' MTD Opp'n 10.)   Nwachukwu replies that even if the

Agreement is a Type II contract, this "adds nothing to

---

[7] Each party raises New York's Statute of Frauds in its briefing papers. Nwachukwu states that "[t]o the extent Plaintiffs claim that the financial terms of the Agreement were later agreed to 'orally,' such terms would constitute an unenforceable obligation[] [b]ecause the Agreement by its terms is not to be performed in one year."   (Def.'s MTD Mem. 8 (citing N.Y. Gen. Oblig. Law § 5-701(a)(i)).)   Plaintiffs, in their opposition brief, misconstrue Nwachukwu's Statute of Frauds argument, in stating that "Mr. Nwachukwu's claim that his contract with Plaintiffs is barred by New York's Statute of Frauds is clearly erroneous."   (Pls.' MTD Opp'n 13.)   Contrary to plaintiffs' beliefs, Nwachukwu does not assert that the Statute of Frauds bars enforcement of the Agreement; rather, he contends that it bars enforcement of any subsequent oral agreement to financial terms.   (Def.'s MTD Mem. 8.)   Therefore, the Court need not address plaintiffs' argument asserted in opposition to a claim that Nwachukwu does not make.   Parenthetically, plaintiffs contend that the e-mails attached to the Edozie Affidavit and Exhibits satisfy the Statute of Frauds.   (See Pls.' MTD Opp'n 13-14.) Because the Court is not considering these extrinsic documents on this motion to dismiss, it does not express a view on plaintiffs' position.

[8] Because plaintiffs do not assert that the Agreement qualifies as a Type I preliminary contract, the Court need not apply the Type I four factor test to the Agreement.

48

Plaintiffs' argument" because Nwachukwu negotiated the financial terms in good faith, although a final agreement never was reached. (Def.'s MTD Reply 6.)

The Court holds that plaintiffs fail to plead the existence of a traditional contract because a material term—the amount of compensation—is missing. See Hunter, 734 F.2d at 900; Vioni, 2009 WL 174937, at *3. This holding, however, does no obviate the need to determine whether the parties had an enforceable Type II agreement, which permits open terms. Analyzing the Agreement as a Type II contract, the Court finds that even if the complaint pleads plausibly the existence of a binding Type II preliminary agreement, it does not plead that Nwachukwu breached the Agreement by failing to negotiate the Agreement's open terms in good faith.

Pursuant to the first and most important factor of the Type II test, the language of the Agreement expresses an intent to be bound. (See Compl. Ex. A ("All parties agree that [the Madu Firm] . . . has introduced [SLN] . . . to [Rwabwogo], . . . and [Nwachukwu] . . . has introduced [Rwabwogo] to SLN and as a result of the[se] introductions . . . SLN, [Rwabwogo], [the Madu Firm] and [Nwachukwu] are desirous of . . . incorporating an entity or subsidiary of SLN . . . in Uganda."); id. ("Signature below shall constitute this as a binding agreement.").) The third factor—the existence of open terms—also is satisfied.

49

(See id. ¶ 5 ("All considerations, benefits, bonds, participators' fees and/or commissions received as a result of the contributions of the Parties shall be allocated as mutually agreed upon.").)  The remaining three factors, however, are inconclusive.  The pleadings fail to allege facts regarding factor two (the context of the negotiations) and factor five (the customary practice of putting such agreements in final form).  Although plaintiffs state that they have "duly performed [their] part of the Agreement" (Compl. ¶ 10), this conclusory statement, which is not supported by any facts, leaves open whether plaintiffs have established the fourth factor of partial performance.  Nonetheless, assuming, as plaintiffs suggest, that the complaint pleads plausibly the existence of a binding Type II preliminary agreement, the existence of a Type II contract does not save plaintiffs' breach of contract claims.  Plaintiffs do not claim that Nwachukwu failed to negotiate in good faith, which is what a Type II contract binds a party to.  See Adjustrite, 145 F.3d at 548 (stating that a Type II agreement does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate open issues in good faith).  In fact, plaintiffs acknowledge that negotiations regarding plaintiffs' finder's fee took place. (See Pls.' MTD Opp'n 10 ("[The parties] negotiated and reached full agreement on the amount of equity in SocketWorks Plaintiffs

would receive as payment for their finders' services.").)
Rather than pleading failure to negotiate in good faith,
plaintiffs plead that "Defendants have breached their agreement
with Plaintiff[s]."  (Compl. ¶ 15.)

Thus, accepting that plaintiffs have pleaded plausibly the
existence of a Type II contract, plaintiffs have failed to plead
that the contract was breached due to Nwachukwu's failure to
negotiate in good faith.  For the foregoing reasons, the Court
dismisses causes of action 1-4, which are predicated on a breach
of the parties' Agreement with respect to the creation of an SLN
subsidiary in Uganda.  The Court also dismisses causes of action
15-16, which are predicated on the existence of an agreed-upon
finder's fee in the form of stock in SLN.  Plaintiffs also fail
to state a claim with respect to their breach of contract claims
pertaining to the creation of SLN subsidiaries in Ghana and
Liberia.  In addition to the reasons stated above—namely, that
plaintiffs do not plead that Nwachukwu failed to negotiate in
good faith—the Ghana and Liberia claims also are dismissed
because the Agreement is silent as to the creation of
subsidiaries in countries other than Uganda.  (See Compl. Ex.
A.)  Moreover, plaintiffs fail to plead any facts supporting
their conclusion that the Agreement, notwithstanding its silence
on Ghana and Liberia, extends to subsidiaries outside of Uganda.
Therefore, plaintiffs' conclusory pleadings pertaining to

plaintiffs' purported entitlement to an ownership stake in the SLN subsidiaries in Ghana and Liberia, (Compl. ¶¶ 31, 65), "are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950.

For the reasons set forth above, the Court dismisses causes of action 1-4 (Uganda), 5-11 (Ghana), 12-14 and 17-19 (Liberia), and 15-16 (SLN) for failure to state a claim under Rule 12(b)(6). The Court also dismisses plaintiffs' twentieth cause of action because it makes allegations only against Chife.

## CONCLUSION

For the foregoing reasons, Nwachukwu's motion to dismiss all causes of action, numbered one through twenty, is GRANTED and Nwachukwu's request to dismiss plaintiff John Edozie for lack of standing is GRANTED. Plaintiffs have thirty (30) days leave to replead and file an amended complaint consistent with this Opinion and Order. Plaintiffs' motion for court-ordered service on defendants SLN, Rwabwogo, Adabla, and Chife via service on Steptoe & Johnson is DENIED. The Court grants plaintiffs sixty (60) days from the date of this Opinion and Order to re-serve the summons and complaint on SLN, Rwabwogo, Adabla, and Chife consistent with the Federal Rules of Civil Procedure and this Opinion and Order and to file proof of service with this Court. Failure to serve and file proof of service within 60 days will result in dismissal without prejudice of this action as against these four defendants.

**SO ORDERED.**
**New York, New York**

January **26**, 2010

Peter K. Leisure

U.S.D.J.

Copies of this Opinion and Order have been e-mailed to:

Marc E. Elliott
Marc. E. Elliot, P.C.
233 Broadway, 5th Floor
New York, NY 10279

John David Lovi
Steptoe & Johnson, LLP
750 Seventh Avenue, Suite 1900
New York, NY 10019